IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| nCUBE CORPORATION (now ARRIS GROUP, INC.), | ) ) ) | |
| Plaintiff-Counterclaim Defendant, | ) ) ) | C.A. No. 01-011 (JJF) |
| v. | ) ) ) | |
| SEACHANGE INTERNATIONAL INC., | ) ) ) | |
| Defendant-Counterclaimant. | ) | |

**OPENING BRIEF IN SUPPORT OF ARRIS'S MOTION TO HOLD SEACHANGE IN CONTEMPT OF THE PERMANENT INJUNCTION ORDER AND <u>FOR AN ACCOUNTING AND FULL REMEDIAL RELIEF</u>**

          MORRIS, NICHOLS, ARSHT & TUNNELL LLP
          Mary B. Graham (#2256)
          1201 N. Market Street
          P.O. Box 1347
          Wilmington, DE 19899-1347
          (302) 658-9200
          mgraham@mnat.com
            *Attorneys for nCUBE Corporation*
            *(now ARRIS Group, Inc.)*

OF COUNSEL:

Krista S. Schwartz
Sasha Mayergoyz
JONES DAY
77 West Wacker
Chicago, IL 60601-1692
(312) 782-3939

July 31, 2009

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION ...........................................................................................................................1

NATURE AND STAGE OF PROCEEDINGS ...............................................................................1

SUMMARY OF ARGUMENT .......................................................................................................3

STATEMENT OF FACTS ..............................................................................................................3

ARGUMENT ...................................................................................................................................5

    I.    SEACHANGE IS IN CONTEMPT OF THE COURT'S PERMANENT INJUNCTION ORDER .................................................................5

        A.    Applicable Legal Standards For Contempt Proceedings ..............................5

        B.    Contempt Proceedings Are Appropriate Because SeaChange's Modification To Its Infringing Product Does Not Create Any "Substantial Open Issues" .................................................7

        C.    SeaChange's Infringing Product And Its Modified Product Are Not Colorably Different ........................................................................10

        D.    This Court Should Award ARRIS Proper Relief For SeaChange's Continued Infringement. .......................................................13

CONCLUSION...............................................................................................................................15

Case 1:01-cv-00011-LPS   Document 209   Filed 07/31/09   Page 3 of 20 PageID #: 86

# **TABLE OF AUTHORITIES**
Page(s)

**CASES**

*Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*,
  154 F.3d 1345 (Fed. Cir. 1998) ............................................................................ Passim

*Brine, Inc. v. STX, L.L.C.*,
  367 F. Supp.2d 61 (D. Mass. 2005) ........................................................................ 9, 13

*Conoco, Inc. v. Energy & Envtl. Int'l.*,
  460 F.3d 1349 (Fed. Cir. 2006) ............................................................................... 3, 9

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*,
  42 F. Supp.2d 385 (D. Del. 1999) ............................................................................. 10

*Eagle Comtronics, Inc. v. Arrow Communication Labs., Inc.*,
  305 F.3d 1303 (Fed. Cir. 2002) ................................................................................. 13

*Ethicon v. Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
  149 F.3d 1309 (Fed. Cir. 1998) ................................................................................. 13

*Fisher-Price, Inc. v. Safety 1st, Inc.*,
  2008 WL 1976624 (D. Del. May 5, 2008) ................................................................ 14

*Graves v. Kemsco Group, Inc.*,
  864 F.2d 754 ............................................................................................................. 14

*John T. v. Delaware County Intermediate Unit*,
  318 F.3d 545 (3d Cir. 2003) ...................................................................................... 13

*KSM Fastening Sys., Inc. v. H.A. Jones Co.*,
  776 F.2d 1522 (Fed. Cir. 1985) .......................................................................... Passim

*Maxon v. Maxon Const. Co.*,
  395 F.2d 330 (6th Cir. 1968) ....................................................................................... 8

*nCUBE Corp. v. SeaChange Int'l, Inc.*,
  313 F. Supp. 2d 361 (D. Del. 2004) ......................................................................... 3, 7

*nCUBE Corp. v. SeaChange Int'l, Inc.*,
  436 F.3d 1317 (Fed. Cir. 2006) ................................................................................ 4, 7

*Roe v. Operation Rescue*,
  54 F.3d 133 (3d Cir. 1995) ........................................................................................... 6

- ii -

*Spallone v. United States*,
    493 U.S. 265 (1990)......................................................................................................6

*Spindelfabrik Suessen-Schur v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*,
    903 F.3d 1568 (Fed. Cir. 1990)....................................................................................14

*Stryker Corp. v. Davol Inc.*,
    234 F.3d 1252 (Fed. Cir. 2000)..............................................................................9, 14

*Toro Co. v. White Consolidated Indus.*,
    266 F.3d 1367 (Fed. Cir. 2001)....................................................................................12

*Vulcan Eng'g Co. v. Fata Aluminum, Inc.*,
    278 F.3d 1366 (Fed. Cir. 2002)..............................................................................9, 12

*W.R. Grace Co. v. Local Union 759*,
    461 U.S. 757 (1983)......................................................................................................5

**RULES AND STATUTES**

FED. R. CIV. P. 1 ................................................................................................................6

**INTRODUCTION**

ARRIS Group, Inc. ("ARRIS") (formerly nCUBE Corporation) requests that this Court hold SeaChange International, Inc. ("SeaChange") in violation of the April 6, 2006 Permanent Injunction Order for continuing to sell products that infringe the claims of United States Patent No. 5,805,804 ("the '804 Patent"). SeaChange's modification to its infringing product is an insignificant change that does not create a colorable difference and does not place its products outside the scope of the Court's injunctive order. ARRIS requests that the Court provide full remedial relief for this violation, including damages, sanctions, and enforcement of the injunction. ARRIS also moves for an accounting in connection with SeaChange's infringement since the date of its last act of infringement for which it has paid damages.

**NATURE AND STAGE OF PROCEEDINGS**

On May 29, 2002, a jury found that SeaChange had willfully infringed the claims of the '804 Patent[1] through sale of its Interactive Television ("ITV") video-on-demand products. The jury's finding of willfulness was based, in part, on SeaChange's destruction of draft opinions of counsel and its failure to provide crucial engineering documents to opinion counsel.

On January 9, 2006, the Federal Circuit affirmed the jury's verdict and this Court's claim construction. On April 6, 2006, this Court entered a permanent injunction ordering, among other things, that SeaChange cease selling its "Interactive Television System that was found by the jury and adjudged to infringe the Adjudicated Claims of the '804 Patent as well as any devices not more than colorably different therefrom."

---

[1] The original suit was brought by nCUBE Corporation which was acquired by C-COR Corporation. ARRIS subsequently acquired C-COR Corporation in December 2007. ARRIS continues to operate the video-on-demand ("VOD") product line that was
(Continued . . .)

Soon after entry of the injunction, ARRIS requested information about SeaChange's products to ensure compliance with the injunction. SeaChange responded with the unsubstantiated assertion that it had redesigned its products after the verdict and that no damages had accrued. SeaChange's correspondence, however, shows that its modified product has the same functionality and same components that the jury, this Court, and the Federal Circuit all found to infringe.

While professing non-infringement, SeaChange quickly initiated re-examination proceedings in the Patent and Trademark Office ("PTO") seeking to invalidate the very same claims of the '804 Patent that SeaChange stated it no longer infringed. The reason for the stark discrepancy between SeaChange's statements and its actions is simple: SeaChange continues to infringe the '804 Patent. Had SeaChange truly believed that it had a non-infringing product, it would not have needed to seek re-examination of the '804 Patent.

On June 24, 2009, the '804 Patent emerged from the PTO re-examination process, and many of the adjudicated infringed claims remain unchanged (including claims 4 and 10). On June 30, 2009, ARRIS requested that SeaChange provide any additional information that it believed ARRIS should consider in evaluating SeaChange's compliance with the permanent injunction order. SeaChange, however, did not provide any information.

SeaChange has now exhausted the obstacles it could throw out to avoid facing the consequences of its continued willful infringement, through which it has amassed ***hundreds of millions of dollars*** in sales and significantly damaged ARRIS' market share in the video-on-

---

(. . . continued)
    formerly operated by nCUBE. For brevity, this memorandum refers to nCUBE and C-COR as ARRIS.

demand ("VOD") industry. Accordingly, ARRIS requests that this Court hold SeaChange in contempt of the permanent injunction and award full relief and sanctions for SeaChange's continued, knowing infringement despite the Court's permanent injunction.

## SUMMARY OF ARGUMENT

"If an accused infringer merely makes colorable changes to the accused product that infringed, a court may properly extend the injunction to the new device and find the party in contempt." *Conoco, Inc. v. Energy & Envtl. Int'l.*, 460 F.3d 1349, 1365 (Fed. Cir. 2006). So it is in this case, where following the infringement verdict, SeaChange did not remove any of the components or functionality that the jury, this Court, and Federal Circuit all found to be infringing. Rather, SeaChange merely changed the location of one component—a change that cannot rise beyond a colorable difference over the products that were found to infringe.

## STATEMENT OF FACTS

On May 29, 2002, the jury returned a verdict finding, among other things, that SeaChange willfully infringed claims 1-4, 6, 7, 9, 10, 12, and 14 of the '804 Patent, that such claims were not invalid, and that SeaChange's infringing sales were subject to a reasonable royalty rate of 7%. *See* 313 F. Supp.2d 361, 365-66.

On April 7, 2004, this Court affirmed the jury's findings and denied SeaChange's motions for judgment as a matter of law on both literal infringement and willful infringement. *See* 313 F. Supp.2d 361. This Court also awarded enhanced damages and attorneys' fees, finding that "SeaChange's failure to investigate the patent and/or rely on the informed opinions of competent counsel before engaging in and/or continuing its infringing activity to be highly relevant evidence on the attorneys' fees issue." *Id.* at 391.

On January 9, 2006, the Federal Circuit affirmed this Court's claim construction orders and the jury's finding of literal and willful infringement. *See* 436 F.3d 1317, 1320-25 (Fed. Cir. 2006). Notwithstanding assertions that it had redesigned its products after the jury's verdict, SeaChange sought a rehearing of the Federal Circuit's decision by both the original panel and Circuit *en banc*. On March 1, 2006, the Federal Circuit rejected both of SeaChange's requests. *See id*. at 1317.

On April 6, 2006, this Court entered a Permanent Injunction Order providing that:

> SeaChange, its officers, agents, servants, employees, subsidiaries, affiliates, attorneys, successors, assigns and those persons in active concert or participation with them who receive notice of this Order by personal service or otherwise are hereby enjoined, during the term of the '804 Patent, from directly infringing, contributorily infringing or actively inducing the infringement of the Adjudicated Claims of the '804 Patent by making, using, selling or offering to sell within the United States or importing into the United States the SeaChange Interactive Television System that was found by the jury and adjudged to infringe the Adjudicated Claims of the '804 Patent as well as any devices not more than colorably different therefrom that clearly infringe the Adjudicated Claims of the '804 Patent.

D.I. 200.

Soon after entry of the permanent injunction, ARRIS requested information regarding SeaChange's products to determine compliance with this Court's order. On May 2, 2006, SeaChange responded by asserting that it had revised the ITV product "placing it outside the scope" of the '804 Patent. *See* Ex. A.[2] SeaChange's modification was simply moving the location of a single component (the Streaming Service) to run on a different set of computers.

---

[2] On June 9, 2006, SeaChange provided a few pages of documentation describing the modification to the infringing product. SeaChange, however, alleges that the documents cannot be used in a court proceeding.

*See id.* at 2.  SeaChange did not remove any key components or the relevant functionality that formed the basis for the jury's infringement verdict and the Federal Circuit's affirmance of that verdict.

Despite assertions that it had modified its product to avoid infringement, SeaChange initiated an *ex parte* re-examination of the '804 Patent, asking the PTO to invalidate the very claims that SeaChange represented it did not infringe.

On June 24, 2009, the '804 Patent emerged from re-examination with several of the infringed claims unchanged.  *See* Ex. B.  In particular, re-examined claims 4 and 10 of the '804 Patent are identical to the claims that SeaChange was found to have infringed.  On June 30, 2009, ARRIS requested that SeaChange provide any information it had regarding modification of its infringing product since 2006.  *See* Ex. C.  SeaChange did not provide such information.

In sum, it is undisputed that a permanent injunction order is in effect.  It is undisputed that SeaChange is bound by that order.  It is evident that SeaChange has sold, and continues to sell, products that infringe the claims of the '804 Patent.  It is clear that SeaChange has no intention of ceasing its infringing conduct.  Consequently, an order holding SeaChange in contempt of the injunction is necessary and appropriate.

## ARGUMENT

### I. SEACHANGE IS IN CONTEMPT OF THE COURT'S PERMANENT INJUNCTION ORDER

#### A. Applicable Legal Standards For Contempt Proceedings

"It is beyond question that obedience to judicial orders is an important public policy.  An injunction issued by a court acting within its jurisdiction must be obeyed until the injunction is vacated or withdrawn."  *W.R. Grace Co. v. Local Union 759*, 461 U.S. 757, 766 (1983).  To that end, "courts have inherent power to enforce compliance with their lawful orders

through civil contempt." *Spallone v. United States*, 493 U.S. 265, 276 (1990). To establish contempt of an injunctive order, a moving party must show by clear and convincing evidence that: (1) a valid court order exists; (2) defendant had knowledge of the court order; and (3) the defendant disobeyed the court order. *See, e.g., Roe v. Operation Rescue*, 54 F.3d 133, 137 (3d Cir. 1995).[3]

In this case, there is no genuine dispute regarding the first two elements. The Court entered a permanent injunction order on April 6, 2006, and the order has been in effect ever since. (D.I. 200.) Further, SeaChange has been aware of the order since its entry. Indeed, SeaChange consented to the language used in the order. (D.I. 199 at 3.) Accordingly, the sole issue before the Court is SeaChange's violation of the order.

The Federal Circuit provides a two-step inquiry for determining contempt of permanent injunctions. *See Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1349 (Fed. Cir. 1998). First, the court determines "whether a contempt hearing is an appropriate forum in which to determine whether a redesigned device infringes." *Id.* Contempt proceedings are proper when there are no "substantial open issues" regarding the differences between the adjudicated product and new product. *Id.* This first step is informed by the FEDERAL RULES OF CIVIL PROCEDURE's guidance of promoting "the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1.[4]

---

[3] A court's ruling on a contempt motion is reviewed for abuse of discretion. *See Roe*, 54 F.3d at 137.

[4] The clear and convincing evidence standard does not apply to this first step because it is a purely "procedural standard." *KSM*, 776 F.2d at 1532.

Second, the court "must resolve whether the new accused device infringes the claims of the patent." *Additive Controls*, 154 F.3d at 1349. In doing so, the court considers "whether the differences between the two devices [i.e., the adjudicated device and new device] are merely colorable." *KSM Fastening Sys., Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1526 (Fed. Cir. 1985).

### B. Contempt Proceedings Are Appropriate Because SeaChange's Modification To Its Infringing Product Does Not Create Any "Substantial Open Issues"

When addressing contempt motions, courts should "utilize principles of claim and issue preclusion [ ] to determine what issues were settled by the original suit and what issues would have to be tried." *KSM*, 776 F.2d at 1532 (indicating contempt proceedings are appropriate when original suit was fully litigated). In view of the extensive prior litigation, the issue in this motion is by necessity focused and narrow.

This Court has previously construed the asserted claims, including claims 4 and 10, and its construction was affirmed by the Federal Circuit. *See* D.I. 112, 113; 436 F.3d at 1320-22. Three adjudicative entities—(1) the jury, (2) this Court, and (3) the Federal Circuit—have already found that SeaChange's products infringe claims 4 and 10. *See* D.I. 128; 313 F. Supp.2d 361 (denying SeaChange's JMOL on literal and willful infringement); 436 F.3d 1317, 1323-25 (affirming same). The reasonable royalty rate was previously adjudicated to be 7%, and SeaChange did not challenge that finding. *See* 313 F. Supp.2d at 365-66. Lastly, SeaChange waived its invalidity challenge to the asserted claims. *See id.* at 381. Nor would a validity challenge be appropriate. *See KSM*, 776 F.2d at 1529 ("Whether there is infringement may not be challenged in contempt proceedings on the basis that the patent is invalid.").

This motion therefore presents the narrow question of whether SeaChange's modification to its infringing product avoids the scope of claims 4 and 10.[5] The Federal Circuit has made clear that "[w]here the alteration to the device is 'merely colorable' and obviously was made for the purpose of evading the decree, the courts will try the question of infringement by a new device in the proceedings for contempt for violation of the injunction." *KSM*, 776 F.2d at 1531. That is precisely the case here.

Analysis of whether substantial open issues exist "turns on a comparison between the original infringing product and the redesigned device." *Additive Controls*, 154 F.3d at 1549. In this case, SeaChange modified the infringing product by moving one component—the Streaming Service—to a different location so that it no longer runs on the same computers as another component—the Connection Manager. *See* Ex. A at 1 ("The Streaming Service has been moved into the Media Cluster."). SeaChange's correspondence describing the modification does not dispute that all the key components from the infringing product are still present, nor does it dispute that relevant functionality of those components still remains. *See id.* at 1-2.

Accordingly, a contempt proceeding is appropriate because the only issue to be resolved is whether shifting the location of the Streaming Service to a different computer is more than a "colorable" difference from the infringing product. On this point, the law has long been settled that "[o]ne may not avoid infringement by a mere change in position of an operable element when the operation and results achieved by the accused device are essentially the same as the patented device." *Maxon v. Maxon Const. Co.*, 395 F.2d 330, 335 (6th Cir. 1968); *see*

---

[5] For ease of analysis, ARRIS' contempt motion focuses on SeaChange's infringement of claims 4 and 10 of the '804 Patent. In doing so, ARRIS does not suggest that SeaChange is not infringing other claims of the '804 Patent.

*Vulcan Eng'g Co. v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1374 (Fed. Cir. 2002) (affirming finding of infringement and rejecting argument that changing location of accused components can avoid scope of claims).

Under similar circumstances, courts routinely conduct contempt hearings to determine whether a defendant's modified device violates an injunction. *See, e.g., Conoco*, 460 F.3d at 1365 (holding contempt hearing was proper when adjudicated and new products "functioned similarly"); *Stryker Corp. v. Davol Inc.,* 234 F.3d 1252, 1260 (Fed. Cir. 2000) (holding that contempt hearing was proper when there were no substantial open issues regarding infringement given that modification of accused product consisted of a slight narrowing of one part and installing clips to take the place of another part); *Brine, Inc. v. STX, L.L.C.*, 367 F. Supp.2d 61, 67 (D. Mass. 2005) (conducting contempt proceedings when only minor difference existed between adjudicated product and new product).

ARRIS expects that SeaChange will attempt to inflate its minor modification into substantial new issues that require consideration of expert testimony. Any such efforts, however, would not diminish the propriety of conducting a contempt hearing. "The presence of a new issue, [ ] even a new issue of claim construction does not necessarily require that a separate infringement action be brought to determine whether the accused device infringes the patent in suit. Contempt proceedings are appropriate ***as long as the new issue does not raise a substantial question of infringement***." *Additive Controls*, 154 F.3d at 1350. Likewise, if this Court desires, it can conduct a hearing and consider expert testimony as part of the contempt proceedings. *See, e.g., id.* at 1349 (approving district court's decision to conduct a contempt proceeding in which expert evidence was considered); *Conoco*, 460 F.3d at 1365 (affirming

contempt finding based, in part, on expert testimony); *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 42 F. Supp.2d 385 (D. Del. 1999).

### C. SeaChange's Infringing Product And Its Modified Product Are Not Colorably Different

In determining infringement of a modified product, courts must "look[ ] to the claims of the patent." *KSM*, 776 F.2d at 1528. The Federal Circuit has explained that "[i]t may, in some cases only be necessary to determine that the modified device has not been changed from the adjudged device in a way which affects an element of a claim." *Id.* at 1528-29. Such is the case here.

Claim 10 of the '804 Patent, which SeaChange's ITV system was found to infringe, provides:

> A high bandwidth, scalable server for storing, retrieving, and transporting multimedia data to a client in a networked system, said server comprising:
>
> **[A]** means for receiving a client request for initialization in a message to an upstream manager in said server, said upstream manager being coupled to a first network;
>
> **[B]** means for obtaining an upstream physical address for said client as said client request enters said server;
>
> **[C]** means for allocating a downstream physical address and downstream logical address for said client corresponding to the upstream physical address obtained for said client, said downstream physical address being used by a downstream manager for sending a stream of said multimedia data from a service on said server to said client, said downstream manager being coupled to a second network; and
>
> **[D]** means for updating a connection service table with said upstream physical address, said downstream physical address, and said downstream logical address for said client.

Claim 4, which SeaChange was also found to infringe, is directed to a "method for retrieving and transporting multimedia data between a client and a server on a network" and recites the same elements as claim 10 without the means plus function terminology.  Neither claim 4 nor claim 10 were changed during the PTO's re-examination of the '804 Patent.

SeaChange does not dispute that its modification did not affect elements **[A]**, **[B]**, and **[C]** of claims 4 and 10, nor does SeaChange dispute that the modified product continues to satisfy those elements.  *See* Ex. A.  Further, there is no dispute that SeaChange's modified product still includes the same key components that were identified at trial to establish infringement:  (1) an SRM which corresponds to the claimed upstream manager and satisfies elements **[A]** and **[B]**; (2) a Media Cluster Agent which corresponds to the claimed downstream manager and satisfies element **[C]**; and (3) a Connection Manager and Streaming Service that correspond to the connection service in the '804 Patent and satisfy element **[D]**.

Rather, SeaChange's modified its infringing product by relocating the Streaming Service to a different computer.  *See* Ex. A at 1.  SeaChange's non-infringement argument for the modified product is that it does not satisfy element **[D]** because "SeaChange has modified the Connection Manager/Streaming Service so that they are no longer one component and so that they do not maintain the Client ID in the connection tables."  *Id.*  That argument fails, both legally and factually, to avoid infringement and does not constitute a colorable difference between SeaChange's infringing product and its modified product.[6]

---

6     In determining whether the modified product contravenes this Court's permanent injunction order, "good faith is irrelevant as a defense to a civil contempt order" because "a party need not intend to violate an injunction to be found in contempt."  *Additive Controls*, 154 F.3d at 1353.

Element **[D]** of claim 10 is written in means-plus-function format, and the element is satisfied when an accused product performs the "claimed function [ ] by either the structure described in the patent or an equivalent of that structure." *Vulcan Eng'g,* 278 F.3d at 1373 (affirming infringement given insubstantial differences between accused structure and structure corresponding to means-plus-function element). The Federal Circuit has explained that "if an accused infringer has simply separated into two components what the patentee has claimed as one component, a fact finder might indeed find such a change 'insubstantial.'" *Toro Co. v. White Consolidated Indus.*, 266 F.3d 1367, 1370 (Fed. Cir. 2001). That is exactly what happened in this case, where the jury found that the combination of the Connection Manger and Streaming Service in SeaChange's product satisfied element **[D]**, and this Court upheld that finding.

As with SeaChange's infringing product, there is no dispute that the modified product includes both a Connection Manager and a Streaming Service. *See* Ex. D at ¶ 7. As with SeaChange's infringing product, there is no dispute that in the modified product the Connection Manager and Streaming Service communicate with each other and work together. *See id.* at ¶ 12. As with SeaChange's infringing product, there is no dispute that in the modified product the combination of the Connection Manager and Streaming Service still receive and store a ClientID, corresponding to the claimed upstream physical address in element **[D]**. *See id.* at ¶ 13.

The unremarkable fact that SeaChange changed the location of the Streaming Service—moving the software from computers that run the Connection Manager code to computers that run the Media Cluster Agent code—does not negate infringement nor does it create a colorable difference from the infringing product. *See id.* at ¶¶ 12-13. With SeaChange's

modified product, as with its infringing product where the Connection Manager/Streaming Service combination was found to satisfy element **[D]**, a "one-to-one correspondence of components is not required" and infringement exists when "two elements of the accused device perform a single function of the patented invention."  *Eagle Comtronics, Inc. v. Arrow Communication Labs., Inc.*, 305 F.3d 1303, 1317 (Fed. Cir. 2002); *see Ethicon v. Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1320 (Fed. Cir. 1998) ("[T]wo physical components of an accused device may be viewed in combination to serve as an equivalent of one element of a claimed invention, as long as no claim limitation is thereby wholly vitiated.").  Simply put, placing the Connection Manager and Streaming Service on separate hardware is not a change that in any way affects SeaChange's infringement because the modified product continues to include the very same components and functionality that the jury found to satisfy element **[D]**.  *See, e.g., Brine*, 367 F. Supp.2d at 70 (finding contempt when modified products "are not different from the [infringing products] in any way which affects Claim Six.  As such, [plaintiff] has proven infringement by clear and convincing evidence.").

Lastly, it appears that during the re-examination process, SeaChange changed the name of its VOD product from the ITV system to Axiom On Demand.  Of course, the re-branding of a product also cannot constitute a colorable difference.  "An enjoined party under a narrow decree ***will not be permitted to escape on a purely 'in rem' theory*** that only a particular device is prohibited, where it is evident that the modifications do not avoid infringement." *KSM*, 776 F.2d at 1526.

### D. This Court Should Award ARRIS Proper Relief For SeaChange's Continued Infringement.

"District courts hearing civil contempt proceedings are afforded broad discretion to fashion a sanction that will achieve full remedial relief."  *John T. v. Delaware County*

*Intermediate Unit*, 318 F.3d 545, (3d Cir. 2003); *see also Additive Controls*, 154 F.3d 1349 ("[T]he district court has broad discretion to determine how best to enforce its injunctive decrees."); *Graves v. Kemsco Group, Inc.*, 864 F.2d 754, 756 (holding that district courts have "discretion to determine the basis for setting the amount of civil contempt damages"). In view of SeaChange's infringing activities after the jury verdict and its ongoing infringing activities in violation of this Court's injunctive order, SeaChange should be ordered to provide information regarding its sales of the ITV and Axiom products since May 2002, and this Court should award ARRIS a 7% royalty on those sales, consistent with the jury's finding.

An award of enhanced damages is also appropriate given SeaChange's conduct in the face of the jury's finding of willful infringement, this Court and Federal Circuit's agreement with that finding, and the subsequent permanent injunction order. *See, e.g., Stryker*, 234 F.3d at 1260 (affirming district court's award of treble damages for infringement in contempt of a permanent injunction in view of minor changes made to originally infringing device); *Spindelfabrik Suessen-Schur v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 903 F.3d 1568, 1578 (Fed. Cir. 1990) (affirming award of treble damages for infringement done in contempt of permanent injunction where defendant's actions were "flagrant contemptuous conduct").

Finally, this Court should award ARRIS its attorneys fees and costs expended in litigating this contempt motion. *See, e.g., Stryker*, 234 F.3d at 1260 (awarding attorneys fees incurred in litigation contempt issue); *Fisher-Price, Inc. v. Safety 1st, Inc.*, 2008 WL 1976624 at *4 (D. Del. May 5, 2008) (same).

## CONCLUSION

For the reasons stated above, this Court should hold SeaChange in contempt of the permanent injunction, and award ARRIS full remedial relief resulting from such conduct, including enhanced damages, sanctions, and enforcement of the injunction to prevent SeaChange from further infringement. This Court should also order an accounting in connection with SeaChange's infringing activities since the date of its last act of infringement for which it has paid damages.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*

Mary B. Graham (#2256)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mgraham@mnat.com
  *Attorneys for nCUBE Corporation*
  *(now ARRIS Group, Inc.)*

OF COUNSEL:

Krista S. Schwartz
Sasha Mayergoyz
JONES DAY
77 West Wacker
Chicago, IL  60601-1692
(312) 782-3939

July 31, 2009
3045097

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2009, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on July 31, 2009 upon the following individuals in the manner indicated:

**BY E-MAIL AND HAND DELIVERY**

Melanie K. Sharp
YOUNG CONAWAY
STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
**msharp@ycst.com**

**BY E-MAIL**

Steven M. Bauer
PROSKAUER ROSE LLP
**sbauer@proskauer.com**

*/s/ Mary B. Graham*

Mary B. Graham (#2256)

2919658