## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

nCUBE CORPORATION (now ARRIS GROUP, INC.)  :
  :
  :
Plaintiff,  :
  :
v.  :  C.A. No. 01-011-LPS
  :
SEACHANGE INTERNATIONAL INC.,  :  UNSEALED ON
  :  OCTOBER 12, 2012
Defendant.  :

---

Mary B. Graham, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE.
Krista S. Schwartz and Sasha Mayergoyz, JONES DAY, and Stacy A. Baim, ULMER & BERNE LLP, Chicago, IL.

    Attorneys for Plaintiff.

Melanie K. Sharp and Monté T. Squire, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE.
Steven M. Bauer, Kimberly A. Mottley, and Justin J. Daniels, PROSKAUER ROSE LLP, Boston, MA.

    Attorneys for Defendant.

---

## MEMORANDUM OPINION

October 9, 2012
Wilmington, Delaware.

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Presently pending before the Court is a motion by Plaintiff ARRIS Group, Inc. ("ARRIS") to hold Defendant SeaChange International Inc. ("SeaChange") in contempt of the Court's 2006 permanent injunction Order. (D.I. 208) The Court held a contempt hearing on March 1, 2012. *See* Contempt Hr'g Tr., March 1, 2012 (D.I. 355) (hereinafter "Tr."). For the reasons explained below, the Court concludes that ARRIS has failed to demonstrate by clear and convincing evidence that SeaChange is in contempt of the Court's permanent injunction Order. Accordingly, the Court will deny ARRIS's motion.

## II. BACKGROUND

The extensive procedural history of this case is discussed in greater detail in the Court's September 2, 2011 Memorandum Opinion. (D.I. 322) For present purposes, a brief overview is sufficient.

ARRIS owns the rights to U.S. Patent No. 5,805,804 ("the '804 patent"), entitled "Method and Apparatus for Scalable, High Bandwidth Storage, Retrieval and Transportation of Multimedia Data on a Network." The '804 patent teaches a media server capable of transmitting multimedia information over any network configuration in real time to a client that has requested the information.

In January 2001, ARRIS initiated patent infringement litigation against SeaChange, alleging that SeaChange's Interactive Television ("ITV") service infringed certain claims of the '804 patent. At trial, ARRIS obtained a jury verdict that SeaChange had willfully infringed the asserted claims of the '804 patent; this Court subsequently granted enhanced damages and

1

allowed ARRIS to recover two-thirds of its attorneys' fees.[1] After the Federal Circuit affirmed the jury verdict and damages award, this Court entered a permanent injunction on April 6, 2006, enjoining SeaChange from selling products that infringe the '804 patent.

During the period between the 2002 jury verdict and the 2006 permanent injunction Order, SeaChange redesigned its infringing ITV system in a manner that it contends placed the modified ITV system outside the scope of the '804 patent, and in turn, the Court's permanent injunction Order. ARRIS disagreed.

On July 31, 2009, ARRIS filed its motion to hold SeaChange in contempt of the Court's permanent injunction Order, alleging that SeaChange's modifications were minor changes that did not remove any key components or the relevant functionality that formed the basis for the jury's infringement verdict. The Court held a hearing on ARRIS's motion on March 1, 2011, *see* Contempt Hr'g Tr., March 1, 2011 (D.I. 298) (hereinafter "2011 Tr."), and received post-hearing briefs addressing whether the parties' dispute was amenable to a contempt proceeding. Shortly thereafter, the Federal Circuit issued its opinion in *TiVo Inc. v. Echostar Corp.*, 646 F.3d 869 (Fed. Cir. 2011) (en banc), which altered the legal standard for contempt proceedings in patent cases. After receiving supplemental briefing addressing the implications of *TiVo*, this Court ruled that ARRIS's motion was amenable to a contempt proceeding, but reserved judgment on the merits to permit both parties to present further evidence during the March 1, 2012 contempt hearing. (D.I. 322 at 30)

---

[1]At the time of trial, ARRIS was known as nCUBE Corporation. Following trial, nCUBE Corporation was acquired by C-COR Corporation, which in turn was purchased by ARRIS in December 2007.

## III. LEGAL STANDARDS

A "party seeking to enforce the injunction must prove both that [1] the newly accused product is not more than colorably different from the product found to infringe and [2] that the newly accused product actually infringes." *Tivo*, 646 F.3d at 882. The patentee bears the burden of proving violation of the injunction by clear and convincing evidence, a burden that applies to both the colorable differences and infringement inquiries. *Id.*; *see also id.* at 881-82 ("The Supreme Court has cautioned that contempt is a severe remedy, and should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.") (internal quotation marks omitted).

When conducting the colorable differences analysis under *TiVo*, "[t]he primary question . . . should be whether the newly accused product is so different from the product previously found to infringe that it raises a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Id.* (internal quotation marks omitted). "If those differences between the old and new elements are significant, the newly accused product as a whole shall be deemed more than colorably different from the adjudged infringing one, and the inquiry into whether the newly accused product actually infringes is irrelevant. Contempt is then inappropriate." *Id.* Conversely, "when a court concludes that there are no more than colorable differences between the adjudged infringing product and modified product, a finding that the newly accused product continues to infringe the relevant claims is additionally essential for a violation of an injunction against infringement." *Id.* at 883.

## IV. DISCUSSION

The parties' dispute concerns only one limitation (highlighted below) from claim 4 of the '804 patent, which recites the following:

3

A computer-implemented method for retrieving and transporting multimedia data between a client and a server on a network, said computer-implemented method comprising the steps of:

receiving a client request for initialization in a message to an upstream manager in said server, said upstream manager being coupled to a first network;

obtaining an upstream physical address for said client as said client request enters said server;

allocating a downstream physical address and downstream logical address to said client corresponding to the upstream physical address obtained for said client, said downstream physical address being used by a downstream manager for sending a stream of said multimedia data from a service on said server to said client, said downstream manager being coupled to a second network; and

***updating a connection service table with said upstream physical address***, said downstream physical address, and said downstream logical address for said client.

(Emphasis added)

During the parties' 2002 trial, ARRIS's expert testified that the "upstream physical address" of claim 4 was the address used to identify a particular client. The expert identified the ClientID as the "upstream physical address" in SeaChange's ITV system. (*See* 2011 Tr., D.I. 298 at 100-01)

Following the jury verdict of infringement, SeaChange modified its system so that the Connection Table – the accused "connection service table" in the ITV system – no longer received the ClientID. (Tr. at 106) Instead, the processing of the ClientID that previously occurred in the Connection Table in SeaChange's infringing ITV system was relocated and performed elsewhere in SeaChange's modified ITV system. (*Id.* at 107-09) Specifically, in the modified ITV system, the Message Normalizer sequesters the ClientID so that it does not reach the Connection Table, and client identification is performed by separately retrieving the ClientID

4

from the Message Normalizer. (*Id.*)

The parties appear to agree on a number of facts regarding SeaChange's infringing and modified ITV systems. The parties do not dispute that, as a result of SeaChange's redesign efforts, the Connection Table is no longer updated with the ***ClientID*** in the modified ITV system. (D.I. 362 at 3; D.I. 373 at 10-11) Nor do the parties dispute that the Connection Table *is* updated with the ***SessionID*** in both the infringing and modified ITV systems; this functionality was not changed during SeaChange's redesign efforts.[2] (D.I. 362 at 3; D.I. 373 at 2) The parties likewise appear to agree that the ClientID and SessionID both contain the same 6-byte "MAC address" information. (D.I. 362 at 3; D.I. 373 at 7) Thus, whereas SeaChange's infringing ITV system previously updated the Connection Table with both the ClientID and SessionID (each containing the same MAC address information), the modified ITV system now updates the Connection Table with only the SessionID (which still contains MAC address information).

The parties' dispute is whether SeaChange's modification – removing the ClientID from the Connection Table, while continuing to update the Connection Table with the SessionID, which still contains MAC address information – takes the modified ITV system outside the scope of the Court's injunction, as SeaChange argues, or renders SeaChange in contempt of the injunction, as ARRIS argues.

## A. "Colorable Differences" Analysis

ARRIS contends that "[t]he extent of SeaChange's attempt to avoid infringement was removing the ClientID from the ITV system's Connection Table while continuing to update the

---

[2]The SessionID is a 10-byte structure formed by combining a 6-byte MAC address with a 4-byte timestamp, ensuring that each SessionID is unique. (D.I. 362 at 3; Tr. at 90:1-12)

same table with the Session ID." (D.I. 362 at 2-3) In ARRIS's view, this modification was insignificant because, "while the infringing system updated the Connection Table with *two copies* of the [MAC address] client identification information, the modified ITV system [still] updates the same Connection Table with *one copy* of that information." (*Id.* at 3) (emphasis added) Thus, ARRIS argues, because "the modified system stores the same client identification information in the same Connection Table as the infringing system," by way of the SessionID, it is not more than colorably different from SeaChange's infringing system. (*Id.* at 4)

SeaChange responds that ARRIS, in seeking contempt, has improperly relied on a previously unaccused element of SeaChange's infringing ITV system, the SessionID. SeaChange maintains that "contempt can only be based on features that were 'unequivocally alleged' at trial as infringing," which ARRIS cannot claim here, since "it is undisputed that the feature which was accused at trial – the ClientID – was redesigned to remove it" from the Connection Table in the modified ITV system. (D.I. 373 at 2) Because the SessionID was not previously identified as the "upstream physical address" during the parties' infringement trial in 2002, SeaChange asserts that ARRIS cannot now seek a finding of contempt based on that newly accused feature.

The Court agrees with SeaChange. In *TiVo*, the Federal Circuit explained that the "colorable differences" analysis "must focus initially on the differences between the features relied upon to establish infringement and the modified features of the newly accused products." 646 F.3d at 882. Specifically, the Federal Circuit emphasized:

> The analysis must focus . . . on those aspects of the accused product that were *previously alleged* to be, and were a basis for, the prior finding of infringement, and the *modified* features of the newly accused product. Specifically, one should focus on those elements of the adjudged infringing products that the patentee *previously*

> ***contended, and proved***, satisfy specific limitations of the asserted
> claims. Where one or more of those elements previously found to
> infringe has been ***modified, or removed***, the court must make an
> inquiry into whether ***that modification*** is significant.

*Id.* (emphasis added). Thus, *TiVo* requires a direct comparison between those elements of an

accused product that previously were specifically identified or accused by the patentee as

meeting a disputed claim limitation, and any subsequent modifications made by the accused

infringer to those specifically accused elements.

Here, only the ClientID of SeaChange's infringing ITV system was previously accused

by ARRIS as satisfying the "upstream physical address." Following the infringement judgment,

SeaChange modified its ITV system by removing the ClientID feature from the Connection

Table. Notably, the ClientID in SeaChange's modified ITV system is still used for client

identification purposes, albeit outside of the Connection Table (in a location and manner as

described above). Under *TiVo*, the Court must assess whether colorable differences exist

between the ClientID functionality in the Connection Table of the infringing ITV system and the

redesigned ClientID functionality that is now implemented via the Message Normalizer of the

modified ITV system. Having undertaken this analysis, the Court finds that ARRIS has failed to

prove, by clear and convincing evidence, that there is no colorable difference between the

ClientID functionality in the infringing ITV system and the ClientID functionality in the

modified ITV system.

During the 2002 trial, ARRIS never identified the SessionID as satisfying the "upstream

physical address" of claim 4. (*See* Tr. at 165) (Dr. Jeffay testifying, "In fact, throughout the

expert reports and even at trial, there was no mapping or discussion of SessionID with regard to

any element of any claim. And in particular at trial there was not even one mention by Dr.

Schonfeld or nCUBE of the SessionID.") Nor, following trial, did SeaChange ever modify or

replace the SessionID as part of its redesign efforts. The Court is not convinced that the

SessionID performs any different function in the modified ITV system than it did in the

infringing ITV system. Accordingly, the Court does not find in ARRIS's SessionID allegations

a basis for finding a lack of colorable differences.

In sum, ARRIS has failed to meet its burden to show that SeaChange's modified ITV

system is not more than colorably different than the version of the ITV system that was found to

infringe.

### B.    "Actual Infringement" Analysis

Because ARRIS has failed to meet its burden on the first prong of the *TiVo* analysis,

ARRIS's contempt motion must be denied. Nonetheless, the Court will proceed to undertake the

second-prong infringement analysis.[3] As explained below, ARRIS has failed to prove by clear

and convincing evidence that SeaChange's modified ITV system infringes claim 4 of the '804

patent.

The thrust of ARRIS's infringement theory is that the ClientID and SessionID each

---

[3]Although the Court made clear in its September 2011 opinion that it was reserving judgment on
the merits of both prongs of the *TiVo* analysis (*see* D.I. 322 at 1, 8, 23, 29-30) – and concluded
only that ARRIS's allegations were amenable to proceeding by contempt – some portions of the
earlier opinion suggest that the proper comparison for purposes of the colorable differences
analysis is between the ClientID in the infringing ITV system and the SessionID in the modified
ITV system (*see id.* at 27-28 n.6; *but see also id.* at 27 ("*Tivo* holds that contempt may be based
only on elements of the infringing device that were alleged and proven at trial to satisfy specific
limitations of the claims of the patent-in-suit. Hence, any analysis about whether colorable
differences exist with respect to the modified ITV product must focus on how ARRIS alleged
and proved to the jury that SeaChange's older ITV system practiced the limitations in element
[d].") (internal citation omitted)). Because of this potential confusion – and also in hopes of
promoting judicial economy (as the Court has received an extensive amount of evidence relating
to infringement) – the Court deems it appropriate under the circumstances to proceed with the
infringement analysis.

contain the same 6-byte MAC address information, which ARRIS contends is used by the modified ITV system to identify the particular client making a request. Thus, ARRIS argues, merely removing the ClientID from the Connection Table did not render the modified ITV system non-infringing, because the Connection Table continues to be "updated" with an "upstream physical address" via the SessionID.

In response, SeaChange maintains that the SessionID and its MAC address are not an "upstream physical address" within the meaning of claim 4, because neither is actually *used* for client identification during operation of the modified ITV system. Instead, SeaChange argues, the 6-byte MAC address is only used in combination with a 4-byte timestamp to *create* a 10-byte SessionID to ensure that every SessionID within the system is unique. (Tr. at 90-91) According to SeaChange, "[w]hile both the SessionID and ClientID have *some digits* the same in a lengthy number . . . the SeaChange system never parses the SessionID to extract those digits from the rest of the digits in the Session ID, [n]or uses them separately." (D.I. 373 at 7; *see also* Tr. at 33 ("[I]f SeaChange's system was pulling it out of the SessionID to do what the ClientID did, maybe we would have a triable issue. But the evidence . . . is it never does.")) Thus, any "*visual* similarity between the [MAC address] portions of the ClientID and SessionID is irrelevant for purposes of infringement, because the actual functioning of the two . . . is entirely different, and . . . the ClientID and SessionID are used to do two entirely different things." (D.I. 373 at 7)

Having considered both parties' arguments and evidence on the issue of infringement, the Court finds that ARRIS has failed to provide clear and convincing evidence that SeaChange's modified ITV system actually infringes claim 4 of the '804 patent. To the contrary, SeaChange – although it does not bear the burden of proof – has come forward with significant evidence of non-infringement. The Court is not persuaded that the modified ITV system utilizes the

9

SessionID or its MAC address information to perform client identification.

On this point, Dr. Schonfeld's testimony was ultimately unconvincing. Dr. Schonfeld failed to address meaningfully SeaChange's assertion that client identification in the modified ITV system is still performed using the ClientID, which has now been removed from the Connection Table. (D.I. 373 at 10-11) In the Court's view, Dr. Schonfeld's testimony attempts to explain how the SessionID stored in the Connection Table *can* be used identify a client by using the MAC address; however, that explanation falls short of the clear and convincing evidence required to demonstrate that the SessionID *actually* is used for client identification during operation of the ITV system.

SeaChange presented persuasive evidence that the modified ITV system does not extract the MAC address from the SessionID. (*See, e.g.*, Tr. at 98-99 (Davi testimony); JX74 at 197-202, 205-06, 236-38 (Schonfeld deposition)) The results of experiments conducted by Dr. Jeffay, as well as SeaChange's 2011-12 remodifications to its ITV system, further support SeaChange's position that client identification continues to be performed by the ClientID (relocated from the Connections Table) rather than the SessionID. (D.I. 373 at 10-12) Specifically, Dr. Jeffay performed a series of tests demonstrating that the ITV system functioned normally when the MAC address in the SessionID was replaced with an arbitrary number, and also continued to function properly even after the SessionIDs were created by exchanging MAC addresses from different set-top boxes. (*Id.* at 12; JX 69 at ¶¶ 106-31) Similarly, SeaChange's 2011-12 remodifications demonstrated that the ITV system functioned properly when using SessionIDs that did not contain any pertinent information from the originating client set-top box. (Tr. at 112, 114-16) If ARRIS's SessionID theory were correct – such that either the SessionID and/or its MAC address was actually used by the ITV system to reference or identify a particular

10

client – then Dr. Jeffay's experiments and/or SeaChange's 2011-12 remodifications should have shown adverse effects on system performance, which did not occur.[4] Thus, although SeaChange bears no burden to demonstrate non-infringement, and the Court makes no such finding here, the Court concludes that the experimental results from Dr. Jeffay's testing and SeaChange's 2011-12 remodifications help defeat ARRIS's effort to meet its burden of demonstrating infringement by clear and convincing evidence.

The Court finds other shortcomings in ARRIS's infringement case. While ARRIS alleges that SeaChange's technical documents describe both the SessionID and its MAC address as client identifiers (D.I. 362 at 6), ARRIS's reading of those documents conflicts with the experimental results of Dr. Jeffay's tests and SeaChange's 2011-12 remodifications. Moreover, it appears that the documents relied on by ARRIS are merely explaining the *origins* of various information contained within the SessionID, rather than their actual *function* within the ITV system. Likewise, the Court agrees with SeaChange that the testimony of Dr. Jeffay and Mr. Davi highlighted by ARRIS does not clearly and convincingly support ARRIS's infringement theory when viewed in the proper context of each witness's complete testimony.

In sum, the Court concludes that the record does not contain clear and convincing evidence that SeaChange's modified ITV system infringes claim 4 of the '804 patent. To be clear, the Court has not found that SeaChange's modified ITV system is non-infringing; nor has the Court made any findings regarding whether ARRIS would be able to prevail under the lower

---

[4]Although ARRIS contends Dr. Jeffay's experiments in fact produced a failure, SeaChange's witnesses explained at the hearing that the errors highlighted by ARRIS were not due to the function of the SessionID, but rather a result of resource conflicts within the system. (Tr. at 118, 169-71) While the parties sharply dispute the significance and source of the error message in Dr. Jeffay's experiment, on balance the Court is not convinced that the error relates to the SessionID.

preponderance of evidence standard applicable in a new infringement proceeding. The Court

simply concludes, for purposes of ARRIS's present contempt motion, that under *TiVo*

SeaChange has raised a "fair ground of doubt" about the wrongfulness of its conduct. ARRIS

has failed to meet its burden of showing contempt by clear and convincing evidence.

Accordingly, the Court will deny ARRIS's motion.[5]

## C.    Evidentiary Objections

In reaching its conclusions, the Court has considered the parties' various evidentiary

objections presented in their post-hearing briefing. (D.I. 357, 358, 364, 365)  The Court will

overrule those objections to the extent they relate to exhibits relevant to the Court's *TiVo*

analysis set forth above.

As an initial observation, the Court is not persuaded by the parties' objections that certain

exhibits are unduly prejudicial under Federal Rule of Evidence 403, particularly in the context of

a contempt motion being resolved by the Court, not a jury. *See Tracinda Corp. v.*

*DaimlerChrysler AG*, 362 F. Supp. 2d 487, 497 (D. Del. 2005) ("Courts have recognized that in

the context of a bench trial, evidence should not be excluded under Rule 403 on the grounds that

it is unfairly prejudicial, because the Court is capable of assessing the probative value of the

article and excluding any arguably improper inferences."). The parties' remaining objections are

addressed below.

---

[5]ARRIS's requests for damages, attorneys' fees, and a finding of willfulness are mooted by the
Court's finding that ARRIS failed to meet its burden to prove contempt. Similarly, the Court
finds no need to address SeaChange's new argument that ARRIS failed to prove the requisite
intent for induced infringement. (D.I. 373 at 3, 8-10; D.I. 376 at 3-5)

### 1. 2011-12 Remodification Documents (DX 1, DX 2, DX 3)

The Court agrees with SeaChange that the exhibits pertaining to SeaChange's 2011-12 remodifications are admissible for purposes of demonstrating that the *current* ITV system does not infringe, as permitted by the Court's February 2012 Order. (D.I. 338) ARRIS concedes that it "does not object to SeaChange's use of DX 1, DX 2, and DX 3 for the limited purpose of arguing that the [current] modified ITV system (as opposed to the remodified system) . . . does not infringe" claim 4.[6] (D.I. 364 at 3) Because ARRIS does not challenge these documents' admissibility for that limited purpose, the Court has considered them in conducting its analysis.

### 2. Annotated System Log Highlighted During Davi Deposition (AX 143)

SeaChange objects to the admission of AX 143, an annotated copy of a system log that was highlighted by Mr. Davi during his deposition prior to the contempt hearing. The Court concludes that this document is admissible, for the reasons set forth in ARRIS's briefing.

### 3. Prior Deposition Transcripts (AX 141, AX 142, AX 175)

The Court concludes that these objections are moot, as the Court has not relied on these disputed deposition transcripts in conducting its *TiVo* analysis.

## V. CONCLUSION

For the foregoing reasons, the Court will deny ARRIS's motion for contempt. An appropriate order follows.

---

[6] ARRIS argues instead that SeaChange has mischaracterized these exhibits and disputes the conclusions to be drawn from them. The Court has considered these arguments in the context of conducting the *TiVo* analysis.